## BROPHY *v.* J. M. BRUNSWICK & BALKE CO.

DEFAULT : JUDGMENT.—When the district court holds a default not excused, it cannot be said that its decision was one way and the evidence all the other, and the judgment be reversed, even if the evidence would seem to justify a different conclusion.

IDEM.—Judgments on default are not to be lightly opened ; a party asking to be let in, must make a clear case.

IDEM.—A default is the non-appearance of the plaintiff or defendant at court within the time prescribed by law to prosecute or defend; when the plaintiff makes default, a non-suit may be entered ; when the defendant makes default, an inquest may be taken, and in each case judgment to correspond will be rendered.

RECORD : COPY : AUTHENTICATION.—When a document is authenticated by a clerk of court, under the seal of the court, as a full and true copy of the record judgment in that court, it is a sufficient authentication, for use in any other court within the territory.

ERROR to the District Court of Laramie County.

The facts are stated in the opinion.

*M. C. Brown*, for plaintiff in error.

The record of the case presents the singular fact, that the court attempted to try the case there without any pleadings, or in other words, without any issue. Section 261 of the Code tells us what an issue is, and the following section, 262, tells what a trial is.

From these sections of the law, it is evident there can be no issue without pleadings, and there can be no trial without an issue. After the issue is made up, if the pleadings in the case which form the issue are lost or withheld from the court by any person, the statutes provide a way to restore the issue or the pleadings. Sec. 126 Civil Code.

The fact that the pleadings had been filed in the court below, did not authorize the court to try an imaginary issue afterwards without pleadings. The proceedings of the court below in attempting to render judgment on the verdict of a jury in an imaginary trial of an imaginary issue, is error. 27 Cal., 522; 28 Cal., 553; 45 Miss., 461; 1 Colo., 263; 65 Ill., 481.

If the pleadings had been in court, it was error to enter the default of the defendant after answer filed, and to prove up as on default. 30 Miss., 396; 6 Tex., 229; 5 Wis., 198.

It is error for a court to permit papers to be read to a jury, when the same are not properly authenticated

*J. W. Kingman*, for defendant in error.

The defendant's default admitted all of the allegations of the petition, and left no issue for the jury to try. *Norris* v. *Dodge*, 23 Ind., 190; *Whiteley* v. *Douge*, 9 Iowa, 597; *Smith* v. *Bellett*, 15 Cal., 23; *Hunt* v. *San Francisco*, 11 Cal., 259.

A defendant may always be defaulted whenever he fails to perform any rule or order of the court, and it does not

depend upon the state of the pleadings. *Norris* v. *Dodge*, 23 Ind., 190; *Phelps* v. *Osgood*, 34 Ind., 150.

PECK, J.—The action was brought by the Company against Brophy, as sheriff of Albany county, for *non feasance* in returning no property found on an execution issued upon a judgment which had been entered up in that county, in its favor, against William C. Wilson. Brophy moved in the first district court, where the suit was pending, for a change of venue, which was denied. After issue had been joined, he not appearing on the call of the case for trial, the company took an inquest, and a verdict was returned in its favor. The case comes here upon his exceptions to the several orders of that court denying the motion for a change of venue, and a motion for a new trial. The latter motion having been denied, judgment was entered in due form upon the verdict. There is nothing to indicate that the refusal to change the venue was incorrect, and the judgment is so far sustained.

As to the motion for a new trial: One ground of it is, that Brophy was prevented from appearing at the trial, by what it designates as "accident and casuality:" this ground being evidently specified under sub-division third of section 306 of the Civil Code, which provides for motions for new trials. Whatever question may arise, as to whether the grounds, set forth in the affidavits filed by him under the motion, are embraced by this specification of the motion, or by this sub-division of the section, we pass over, in order to consider the motion in the most favorable aspect for him.

The affidavits attempt to excuse his non-appearance upon grounds, the existence of which are in part open to inquiry upon the face of the affidavits, in part are denied by the affidavit of John W. Kingman. The district court held that the default was not excused; we cannot say that its decision was one way, and the evidence all the other, and, therefore, could not reverse, even if the evidence seemed to

us to justify a different conclusion. But it is due to that court to add, that it could not have intelligently reached a different conclusion. Judgments on default are not to be lightly opened; a party asking to be let in, should make a story a clear case ; a different rule would invite, not repress default. One ground presented in the Brophy affidavits is, that his counsel, a material witness for him in the case, was detained at Laramie by sickness in his family, and so prevented from attending at the trial. According to the affidavits, that counsel was a material witness for the defense, Brophy alone testifies of his detention ; it is possible; but improbable that he had any personal knowledge upon the subject; that counsel had the personal knowledge, and the absence of his testimony suffices to condemn the application, so far as this ground of it goes. Besides, for aught that is suggested, the alleged cause of detention was known in season to have enabled Brophy to take his deposition. Another ground presented in Brophy's affidavits, is, that he was a material witness for himself, and was prevented by a storm from making at Laramie a connection with the east bound passenger train of January 1, 1878, by which he could have reached Cheyenne in season for the trial, which was set for, and took place on the next day. It does not appear, however, and his affidavit does not attempt to show that there was no intermediate train, by which he could have arrived in time, and the court in the absence of contrary proof, must take such judicial notice of the nature and methods of railway traffic, as to presume that there was such intermediate train, when the affiant, the party in interest, having the means of knowledge, omits to show that there was not. But, treating his uncontradicted affidavits as satisfactorily explaining his non-attendance, the counter-affidavit, uncontradicted, as satisfactorily shows that Brophy was indemnified against a judgment for the Company, was personally indifferent as to the result of the case, and as to his being present at the trial, and thus that his non-attendance was not owing to storms or misconnec-

tion. But the counter-affidavit more than balances the opening affidavits on this point. As the moving party, it was Brophy's right and interest to file a replying affidavit, so far as to contradict the counter-affidavit, and support his opening affidavits he omitted to do so, and thus stands as admitting the truth of the opposing affidavit. Therefore, we unhesitatingly agree with the conclusion of the district court, in overruling the motion on this ground, and hold that the default was not excused.

Another ground is, that Brophy was defaulted, and the company allowed to take an inquest, " when there was an answer on file." These proceedings constituted an irregularity. The record shows that on the 18th day of December, 1877, in open court, by agreement of parties, the case was assigned for trial on the second day of January following; that, on that 18th day, all the papers in the case were taken from the files of the court, and carried away by the same counsel of Brophy,—who, the counsel, resided at Laramie,—and were not returned till after the trial. The taking of the inquest in the absence of the pleadings is now urged before us as a ground for reversal. The withdrawal and detention of the files, may have been the result of coincidence with the other facts, with which those two facts are connected, not of a purpose to delay the trial; we prefer to put the milder interpretation upon the matter, and therefore to assume, and we do assume, that they were neither withdrawn, nor withheld with that purpose. Nevertheless, what is the scope of this proposition of irregularity? It permits, and therefore claims that a party may withdraw the papers of a case from the court, withhold them until after the trial, and absent himself from the trial, in order to prevent a trial,—and, that scheme failing, and an adverse judgment resulting, may thus secure the foundation for a reversal; the plan would be a witty, because a most successful invention to shun a trial, and to stay the administration of justice, securing to either party, at his will, the complete control of, the jurisdiction of the court.

·A default is the non-appearance by plaintiff or defendant at court within the time prescribed by law, to prosecute or defend. When the plaintiff makes default, a nonsuit may be entered; when the defendant makes default, an inquest may be taken, and in each case a judgment to correspond will be rendered. The default, inquest and judgment, taken in the present case, were regular, so far as this branch of the motion goes.

Another ground is, that the inquest was taken without the pleadings to show what the issues were. The proposition stands upon the principle last considered; and if entertained, would place the proceedings within the control of any party who might see fit to abstract the files, and would invite to the practice. It does not follow, that in the absence of the pleadings, the issues cannot be ascertained by the court. If it appeared in this case that the issue tried was not the issue tendered by the petition,—was a false issue,—an irregularity would appear. But the issue tried was that tendered by the petition; and, as by the default of the defendant he lost the benefit of his answer,— the case standing for all the purposes of an inquest, as if no answer had been made—that was the only issue to be tried. The motion in respect to this branch, was not well made.

The motion demands a new trial for error in the assessment, and because the verdict is not supported by sufficient evidence, and is against law. Here is a party who turns his back upon the case and abandons his defence; for all the purposes of principle, he stands as if he did it in the effort to frustrate a trial; the effort failing, and the case going against him, he reappears, claiming the same benefit of exception that he would have had, had he been faithful to the case,· and raised his objections, as it proceeded. Whether he did not waive the objections, which he might have so reversed; whether a party can thus experiment with his case, and lose nothing; whether he can thus cast away, yet keep, is a question that we do not pass upon; in

order to deal with the motion upon the strongest hypothesis in favor of the defendant, we simply assume that all objections, if any there are apparent upon the record, stand secured to him the same as if he had appeared at the trial, and formally raised them. Upon this assumption we have considered the several objections for irregularity, which we have disposed of.

It is objected that the copy put in evidence as a record-copy of the original judgment, was not properly authenticated. The document is authenticated by the clerk of the second district court for the county of Albany, under the seal of the court, as a full and true copy of the record of the judgment lying in the court; this was a sufficient authentication for use in any other court within the territory.

This disposes of the objection that it did not appear where that judgment was entered. Also, of the objection that the copy of execution, introduced as the copy of the execution alleged to have been falsely returned, was not duly authenticated. Also of the objection that the judgment copy is unsigned. This objection is put upon sections 396 and 398 of the Civil Code, of which section 396 provides that the clerk shall make a complete record of every cause during the vacation next succeeding to the term of its final determination, which record the presiding judge shall at the next term subscribe; and section 398, that the clerk failing to bring up the records, the judge shall cause them to be made, and shall then subscribe them. The subscription of the judge under section 396, plainly is to be a single subscription at the foot of the records of an entire term; and his subscription under section 398, is to be a single subscription at the foot of all the records, so specially caused to be made. The sections aim to increase the verity provided for by the common law, but are inadequate to, and cannot be held to supersede the practice of the common law, according to which a party may have an authenticated copy of a particular record, for use beyond that court, as he may

desire it, and irrespective of those sections. It is objected that the judgment is void, because a confessed judgment, but unaccompanied by an affidavit of confession, filed before the entry of the judgment. If the judgment is void, the Company has suffered nothing by the alleged omission to levy, and its claims for damages were wholly fictitious. The confession was based upon promissory notes executed on the 16th day of September, 1873, and was made on the 12th day of October, 1874. It conforms to the act of December 11, 1873, which provides in its 385th section, that the cause of action shall be briefly stated in the judgment; but in its 710th section, that the act shall not apply to promissory notes theretofore executed, and that such notes shall be controlled by the laws there, at the date of the act in force.

Therefore, the act of December 10, 1869, which provides in its 431st and 432d sections that the cause of action shall be briefly stated in the judgment, and that, before the entry of the judgment, an affidavit of the defendant shall be filed, stating the facts, on which the indebtedness arose, and that its amount is justly due and owing by him to the plaintiff, applies; the present confession is unaccompanied by the affidavit, does not conform to this statute, and is defective. The district court, however, in which it was made, had jurisdiction of the subject matter, and, by his appearance, of the debtor; the confession was voluntary and oral, made at the bar, entered of record, has the verity of a record, and is good at common law; it bound the debtor under the statute; the defect in the confession is a mere irregularity, which that court could have allowed, and can allow to be supplied by making and filing the affidavit *nunc pro tunc*; and which no party could have complained of but the judgment creditor, or a third party, interested in a lien obtained under it, and then only by a direct proceeding instituted in that court. The judgment cannot be impeached collaterally. In the present case Brophy not only attempts to impeach it collaterally, but has no capacity which justifies his impeaching it directly.

So much of the judgment also of the execution as relates to a mortgage lien, we treat as superfluous; we construe the one only so far as a general and personal judgment, and the other only as a process to correspond.

The proof of a false return was direct, full and clear; the charge was correct; and the verdict just.

It is objected that the verdict purports to have been rendered, not in this, but another case. There is nothing to support the objection.

The motion for a new trial was properly denied.

The judgment is affirmed with costs; but not the five per cent. applicable to a dilatory appeal.

udgment affirmed.