ALTON E. EAGER,

*Plaintiff and Respondent,*

vs.

ALFRED DEROWITSCH,

*Defendant and Appellant.*

(No. 2493; June 19, 1951; 232 Pac. (2d) 713).

For the defendant and appellant the cause was submitted upon the brief of John F. Raper, Sheridan, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Henry A. Burgess of Sheridan, Wyoming.

## OPINION

RINER, Justice.

This litigation arose in consequence of an automobile collision between a car driven by plaintiff, Eager, and one driven by the defendant, Derowitsch, on highway 87 between the town of Buffalo and the city of Sheridan. The accident, according to plaintiff's petition, occurred April 19, 1949. As a consequence of the collision plaintiff's car was damaged as he claims in the sum of $448.36.

Shortly after the accident, as claimed by Derowitsch, the parties represented at that time by the same counsel, who appeared in the District Court of Sheridan County, Wyoming, in connection with the action filed in that court and presently to be mentioned, agreed on a compromise settlement of the matter of damages to plaintiff's car, under the terms of which arrangement Derowitsch was to pay and did pay Eager the sum of $100.00 in full settlement of any and all claims which Eager could or would assert against said Derowitsch as a consequence of the collision aforesaid. This claim does not appear as the record before us now stands, to be

controverted by affidavit or sworn testimony on the part of the plaintiff. At any rate Eager admits the payment to him of $100.00 as asserted by Derowitsch.

July 5, 1949, about two and one half months after the accident and after the alleged compromise settlement as described above had been had, counsel for Eager brought an action in the District Court of Sheridan County against Derowitsch asserting that Derowitsch was guilty of negligence in entering the highway over which Eager was driving the latter's auto so that Eager was unable to safely pass the car of the defendant which had been backed out upon the highway. As a consequence of the alleged carelessness and negligence of the defendant in operating his car thus, a collision between the two cars ensued. Plaintiff's car was damaged as he claims "to the extent of $448.36" according to an itemized statement attached to plaintiff's petition and by reference incorporated therein. Plaintiff's petition then states that the defendant paid plaintiff in "partial satisfaction of said damages but refused to pay the additional sum of $348.36 which is still due and owing," and for which plaintiff prays judgment.

Summons was issued and served personally on Derowitsch on July 5, 1949. By that writ Derowitsch was notified to answer the plaintiff's petition "on or before" August 6, 1949, and that unless he answered the plaintiff's pleading on that day "said petition with all the matters and allegations therein contained" would be "taken as true and judgment rendered accordingly." August 6, 1949, was, of course, a Saturday and on the following Monday August 8, 1949, upon examination of the District Court file in this matter one William D. Redle, an attorney engaged in the practice of law in the City of Sheridan, acting for Henry A. Burgess, the attorney who it is claimed by defendant had engaged in the compromise negotiations above described, and at

the request of said Henry A. Burgess, ascertained that there had been no answer or other pleading filed in said action as commanded by the writ aforesaid. As appears by Redle's affidavit in the record he thereupon presented to the presiding judge of the district court, Hon. James H. Burgess, the file in this matter and requested:

"That a default judgment be entered herein; that in support of the plaintiff's allegations as to damages, I did offer in the nature of proof to the Judge of this Court, an itemized repair bill signed by the co-owner of the Central Garage showing the itemized repairs necessary to the plaintiff's car and also showing the payment of $100.00 thereon leaving a balance of $348.36. That after an examination of said bill by the Judge of this Court, he did enter a default judgment in this matter."

The date of this default and judgment rendered pursuant to Redle's request was August 8, 1949. It does not appear that any oral sworn testimony or other written evidence was produced before the district judge at the time the default judgment was asked for and rendered.

On August 29, 1949, counsel for defendant, Derowitsch, filed in said district court a motion to vacate the judgment rendered on August 8, 1949, as aforesaid. The grounds of said motion were in substance stated to be that the defendant had a good sufficient and meritorious defense to said action and that defendant intended to defend said action:

"That after he was served with summons and a copy of the Petition filed herein he took the same to the law office of John F. Raper and retained the said John F. Raper to represent him in said matter, but due to a misunderstanding between said Defendant and his said attorney no answer or other pleading was filed within the time fixed in said summons and consequently a pretended default judgment was taken on the first Monday following the answer date in said summons"

that the action aforesaid was filed in said court, summons issued on July 5, 1949, and judgment entered on August 8, 1949, all during the April 1949 term of said court and this motion to vacate the plaintiff's judgment was also filed and presented during the April 1949 term of said court; that said court has full authority and power to vacate such judgment and allow the defendant to answer or otherwise plead to plaintiff's petition; that said judgment should be vacated "in furtherance of justice."

"That said action is an action for damages growing out of an automobile accident which occurred on highway 87 between Sheridan, Wyoming and Buffalo, Wyoming on the 19th day of April, 1949 and no proper and sufficient proof of said damages, as alleged in Plaintiff's Petition was adduced or established at said hearing held on August 8, 1949, being the date of said pretended default judgment and said judgment is void and of no force and effect."

This motion to vacate the judgment aforesaid was supported by the affidavit of the defendant and his attorney, John F. Raper. The affidavit of defendant's attorney is as follows:

"that on or about the 11th or 12th day of July he conferred with Alfred Derowitsch regarding the action which had been instituted in the District Court for Sheridan County, Wyoming against him by Alton E. Eager as Plaintiff; that the said Derowitsch delivered to affiant the Petition and summons which had been served upon him and left said documents in the office of your affiant; that he discussed said defense with your affiant and was advised by your affiant that he had a good defense to said action; however, your said affiant was of the impression that nothing further was to be done in connection with the defense of said action until your affiant had heard further from the said Derowitsch, but, the said Derowitsch is of the opinion that he had instructed your affiant to do all things necessary in connection with the defense of said action; that as a consequence of this misunderstanding between your

said affiant and said Derowitsch and further on account of the press of other business at the time of the answer date fixed in said summons, no answer or other pleading was filed on or before said answer date; and, as a consequence thereof a pretended default judgment was entered in said case against the said Alfred Derowitsch on the 8th day of August, A.D. 1949 for the full amount of Plaintiff's claim, to-wit: the sum of $348.36, together with the costs of the action taxed at $8.50; that in view of all of the circumstances in connection with this matter, this honorable Court should vacate said judgment and permit said Defendant to plead to Plaintiff's Petition and defend said action."

The affidavit of the defendant is substantially similar to that of his counsel.

On April 13, 1950, shortly before the death of the presiding judge of said court, the motion to vacate said judgment was heard by the court, Hon. H. P. Ilsley, Judge of the 6th Judicial District sitting; oral arguments were presented by counsel for defendant and counsel for plaintiff; briefs were requested by the court and thereafter on May 31, 1950, the court entered its order and judgment denying and overruling the defendant's motion to vacate aforesaid, to which ruling defendant duly saved his exception. During the course of the argument on the motion to vacate counsel for the defendant filed a motion for leave to amend his motion to vacate by attaching thereto the proposed answer which would have been filed if the court vacated said judgment. Leave to amend the motion as requested was apparently granted and defendant's proposed answer evidently was before the district court at the time said motion was ruled upon, with the result indicated above. The proposed answer omitting title and prayer is as follows:

*"FIRST DEFENSE.*

1. Defendant, for his first defense, denies each and

every paragraph, allegation and statement contained in Plaintiff's Petition filed herein, not hereinafter admitted or otherwise explained.

## SECOND DEFENSE

1. Defendant, for his second defense, alleges that on or about the 19th day of April, 1949, while backing on to Highway 87 from a position where he had been parked near what is known as Kelly's Bar at Story, Wyoming, and prior to backing his said car on to Highway 87, he looked in both directions to see whether or not any cars were approaching and no cars at the time of his attempting to back on to said Highway were in sight, but before he completed the operation of backing his car on to said Highway and getting the same in the proper line of traffic, a car approached from the south being operated and driven by the Plaintiff herein, which car was traveling at a dangerous, reckless and unlawful rate of speed and at a speed in excess of sixty miles per hour, and said Plaintiff, after observing the Defendant backing his car on to said Highway 87, was unable to bring his car under control in time to prevent the same from colliding with Defendant's car, and as a result of said Plaintiff's unlawful, negligent and careless operation of his said motor vehicle, said collision occurred; that Plaintiff's said unlawful, careless and reckless operation of his said motor vehicle was the sole and proximate cause of said accident and the consequential damages to Plaintiff's car.

## THIRD DEFENSE

1. Defendant, for his third defense, alleges that notwithstanding the fact that he believed the Plaintiff to be solely responsible for the damages to his said car, made a compromise settlement with said Plaintiff in order to avoid the expense and vexation of litigation and said Defendant, since the making of said settlement, has at all times believed that said matter was finally settled; that said settlement with said Plaintiff was made shortly after the date of said accident so as to permit said Plaintiff, who is a non-resident of the State of Wyoming, to proceed on his journey.

## FOURTH DEFENSE

1. Defendant, for his fourth defense, alleges on information and belief that this instant action is wholly unauthorized by said Plaintiff and that said Plaintiff has no knowledge of the institution of said action and that said Plaintiff is no longer the real party in interest by reason of the settlement which was made between Plaintiff and Defendant growing out of said accident as herein alleged."

Before proceeding further in our review of this case some elementary and preliminary legal principles governing causes situated as this one was as it came before the district court may properly be recalled:

31 Am. Jur. 265 § 715 says that:

"Under the tendency of the courts to require causes of action to be tried upon the merits, judgments by default are regarded as peculiarly within the rule conferring authority on courts to open, correct, or vacate their own judgments."

The same text in section 717, page 267, also declares that:

"Whether proceeding under the common law or a statute, the action of a trial court in granting or refusing an application to open, modify, or vacate a judgment is, generally speaking, within the judicial discretion of such court. In a case of reasonable doubt, where there has been no trial upon the merits, this discretion is usually exercised in favor of granting the application so as to permit a determination of the controversy upon the merits."

In the case of Sioux City Seed Co. vs. J. H. Montgomery, 42 Wyo. 170; 291 P. 918, this court has pointed out that:

"Now, a court has full control over its orders or judgments during the term at which they are made, and may, in the exercise of its discretion, amend, correct, open or vacate them. McGinnis vs. Beatty, 28 Wyo. 328,

204 Pac. 340; 34 C.J. 207. This power is derived from the common law, and exists independently of any statute. The judgment may, during that time, be set aside on the court's own motion or upon the motion of an interested party. The form of the motion is not of importance. Thus it has been held that it may be oral. Hartman vs. Viera, 113 Ill. App. 216."

In Shaul vs. The Colorado Fuel & Iron Company, 46 Wyo. 549; 30 P. (2d) 478, it was additionally said regarding the rule referred to in the Montgomery case supra that:

"It is settled in this state that during the term the court has the power to set aside a judgment entered during the same term, with the restriction only that the power be exercised within a sound discretion. Mitter vs. Black Diamond Coal Co. 28 Wyo. 439, 206 Pac. 152; McGinnis vs. Beatty, 28 Wyo. 328, 204 Pac. 340. In 34 C.J. 207 that rule is stated as follows:

'A court has full control over its orders or judgments during the term at which they are made, and may, upon sufficient cause shown, in the exercise of its sound discretion amend, correct, revise, supplement, open or vacate such judgments. This was the rule at common law, and it prevails in almost all jurisdictions. Unless previously adjourned sine die, every term continues until the beginning of the next for the purpose of this rule.'

In 15 R.C.L. p. 688, it is said:
'All courts of record have inherent power to vacate or set aside their judgments or orders during the term at which rendered. This is a power of daily exercise by the courts, and its existence within proper limitations of time and propriety cannot be questioned; it is based upon the substantial principles of right and wrong, to be exercised for the prevention of error and injury, and for the furtherance of justice. Not only may a court set aside a judgment on application therefor, but in proper cases it may take such action on its own motion.' "

Another recent statement of the point appears in Puterman vs. Puterman, 66 Wyo. 89; 205 P. (2d) 815 where it was held that the trial court in the exercise of

a sound discretion and on its own motion or motion of an interested party could set aside, amend, correct, open or vacate its orders and judgments during the term at which they were made.

As to what is meant by the words "abuse of discretion" it was noted in the Puterman case supra that many courts have approved the definition set out in Barrett vs. Broad River Power Co. 146 S.C. 85; 143 S.E. 650-654 thus:

"We are sure that in many instances, in the years gone by, the rulings of presiding judges, in matters wherein they are given the right to exercise their discretion, were not interfered with because of the old unfortunate statement to the effect that it must be shown that there was an 'abuse of discretion.' Recently it has been shown time after time that the term 'abuse of discretion' does not mean any reflection upon the presiding judge, and it is a strict legal term, to indicate that the appellate court is simply of the opinion that there was commission of an error of law in the circumstances."

In Lake vs. Lake 63 Wyo. 375; 182 Pac (2d) 824, it was properly said:

"Judgments by default are not favored. Courts prefer that cases be tried upon the merits,"

this court had previously so held. McGinnis vs. Beatty 28 Wyo. 328; 204 Pac. 340.

After the term at which a judgment is entered the district court is also empowered to vacate such a judgment for various reasons among them being: "mistake," "unavoidable casualty or misfortune preventing the party from prosecuting or defending" section 3-3801 W.C.S. 1945, and it was said in Lake vs. Lake supra 398-399, that:

"The power of the court in this respect should be exercised at least as liberally when the motion to vacate is

made during the term as when it is made after the term, and probably more liberally."

The two Wyoming cases Kelley vs. Eidam 32 Wyo. 271; 231 Pac 678; and Brophy vs. Brunswick & Balke Co. 2 Wyo. 86, to which our attention has been drawn by plaintiff and respondent are hardly to be considered as in point here. In the Eidam case this was said:

"The record shows that the attorney was present when the motion, filed by defendant's former counsel, to make more definite and certain, was stricken, and that he took an exception thereto. He then left the court room without answering or making any effort to answer, or to have a time set in which he might answer."

In the Brophy case, supra, counsel for the losing party failed to file a replying affidavit "to contradict counter affidavit and support his opening affidavits." In other words both of these cases were regarded by the court as *"intentional"* defaults. We have no such case as that before us now. No affidavits of any character were filed by plaintiff disputing the assertions made in the motion to vacate the default or in the affidavits supporting that motion.

It appears that Derowitsch a short time after he had been served with summons and a copy of the petition in the action had left these papers with his counsel who had previously to the knowledge of plaintiff's counsel acted for him when, as defendant thought, a compromise or settlement had been made of any liability growing out of the collision hereinbefore described. Those papers made it perfectly clear that an answer to the action should be filed in the cause in defendant's behalf before August 6, 1949. Under these circumstances it would seem that one even unlearned in the law would and could easily conclude that the lawyer with whom he left the papers would give the matter attention or at least if he did not intend to take any action along that

line that notice would be given defendant so that he could take proper steps to protect himself. That the lawyer did not do this can very well be regarded as a case of surprise on the part of his client. We are not without authority on this point: In Bradley vs. McPherson 56 A. (N.J.Ch.) 303, where a default was sought to be opened and a defense on the merits allowed the court said:

"The case exhibited is one where a party appears to have believed that the defense was being made, and by misunderstanding of (or) misadventure of counsel no defense was made. The decree in the case is marked, signed and filed August 6; 1903. The case exhibited shows such a condition of surprise as justifies the opening of the decree in order that a defense may be made by the devisees of McPherson.

"It appears that subsequently to the decree, and on the day that the petition to reopen it was filed, the complainant, Bradley, who had obtained the quieting decree to be entered, conveyed portions of the premises in question to other parties. If the decree is to be opened, the complainant, who appears to have been strictly within his rights in entering the decree, should be heard upon the terms to be imposed as a condition for the opening of it.

"Counsel for the petitioners may present upon notice to counsel for the complainant an order opening the decree, and both sides may be heard upon the terms."

In Ex Parte Rountree Michalson vs. Rountree 51 S.C. 405; 29 S.E. 66, this language was used:

"While we do not question the right of counsel to withdraw from a cause which he has undertaken, because of the failure or refusal of his client to pay his fee, yet we are of opinion that notice of an intention to withdraw should be given to the client, so as to enable him to take other measures for the protection of his rights; and where, as in this case, no such notice was given, which we think the client was entitled to expect, and judgment

by default goes against him, it may be regarded as a case of surprise."

In the case at bar we reiterate it seems plain that if counsel had had no intention of filing a pleading on behalf of Derowitsch at the proper time, Derowitsch should have been notified so that he could have protected his rights by employing other legal assistance and thus preventing the default being taken against him.

Other authorities that throw light upon the matter in hand are: The Supreme Court of Nebraska in the comparatively recent case of Barney vs. Platte Valley Pub. Power & Irrigation District 147 Neb. 375 23 N.W. (2d) 335 used this language:

"It is the spirit and policy of the law to give every party an opportunity to prosecute or defend his case in court, and courts will never deny such right except for the fault or gross laches of such party or his authorized attorney." Clutz vs. Carter, 12 Neb. 113, 10 N.W. 541, 543.

"The courtesy that should prevail between opposing counsel to a cause ordinarily requires that counsel for one party should, before taking a default, give notice to counsel for the other side of his intention so to do." Lacey vs. Citizens' Lumber & Supply Co., 124 Neb. 813, 248 N.W. 378, 379.

"Ordinarily, where a judgment has been entered by default and a prompt application made at the same term to set it aside, with a tender of an answer disclosing a meritorious defense, the court should, on reasonable terms, sustain the motion and permit the cause to be heard upon the merits." (citing cases).

In the Citizens' National Bank of Sisseton, S. D. vs. Branden, 19 N.D. 489; 126 N.W. 102, the court said in reversing a judgment taken by default that:

"* * * an appellate court will first examine a case for

the purpose of determining whether or not under the facts shown the discretion vested in the district court has been arbitrarily or oppressively exercised; or, in other words, whether or not its order evinces an abuse of discretion. Unless such abuse of discretion appears, the order, if it opens and vacates a judgment entered by default for the purpose of permitting a meritorious defense, will not as a rule, be disturbed. In a case such as this, however, where the court has refused to open up a default and permit a defense upon the merits, even though the discretion of the trial court does not seem to have been exercised intemperately, arbitrarily, or in a manner palpably erroneous, the reviewing court will extend its inquiry further, and determine whether or not upon the facts shown, in the interests of justice and right under the liberal construction which the spirit of the statute seems to commend, it should disturb an order which has the effect of preventing a determination upon the merits. 'Courts almost universally favor a trial on the merits; and, when there has been a reasonable excuse shown for the default, there should be no objection to such a trial to those who are reasonably diligent.' Barto vs. Sioux City Electric Co. 119 Iowa, 179; 93 N.W. 268."

The Commission of Appeals of Texas formulating a rule for the guidance of trial courts and inferior courts of appeal in that state has seen fit to say in Craddock vs. Sunshine Bus Lines, Inc. 134 Tex. 388; 133 S.W. (2d) 124, that:

"An inspection of the many decisions by our several courts on the question here involved reveals that the purpose of the court in the Dowell-Winters case in announcing the principle to which the practice should be referable, namely, to produce uniformity, has not been fully realized. Some lack of uniformity still exists. This is probably due, in part at least, to the fact that the question is controlled by principles of equity and it accordingly has been announced many times that its decision is directed to the sound discretion of the trial court. Naturally, appellate courts will differ on the delicate question of whether trial courts have abused their discretion. While trial courts have some measure of

discretion in the matter, as, in truth, they have in all cases governed by equitable principles, it is not an unbridled discretion to decide cases as they might deem proper, without reference to any guiding rule or principle. Trial judges desire and are entitled to have a principle or rule to guide them, and we, therefore, reannounce, in slightly changed language the rule established by the above authorities, as follows: A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. This is a just rule. It prevents an injustice to the defendant without working an injustice on the plaintiff. Such a rule has the sanction of equity."

Mr. Freeman in 1. Freeman on Judgments (5th Ed.) 378, 379, section 195 has asserted that:

"But during the term, upon a prompt application the court's discretion should ordinarily be exercised in favor of a defaulted defendant, unless his default was due to his willful or grossly negligent failure to make an appearance."

In Huffman vs. Meriwether 201 S.W. (2d) (Mo. App.) 469, we find the Court of Appeals in Missouri recently saying that:

"There is no showing that to have set aside the default judgment any harm would have been done respondent, except to require her cause to be tried on its merits which should be the policy of the courts 'whenever such a course will not result in hurtful delay.' Tucker vs. St. Louis Life Insurance Company, 63 Mo. 588. It was a matter in the discretion of the trial court to grant or to deny the motion to set aside the default judgment, but this discretion 'is not an arbitrary or capricious one, but legal and judicial, resting upon the facts and guided by them and the law so that substantial equity and justice may be done.' Hall vs. McConey, 152 Mo. App. 1, 132

S.W. 618. Under all the circumstances here shown, we believe the court abused its discretion in refusing appellant's motion to set aside the default judgment, to allow the answer filed to stand as such, and to permit a new trial on the merits of the case. In such a case the judgment should be set aside on conditions that are equitable and just. Hall vs. McConey, supra."

In line with the authorities above reviewed the Kansas Court of Appeals in Board of Education of City of Hutchinson vs. The National Bank of Commerce, 4 Kan. App. 438; 46 Pac. 36, states that:

"The board of education having presented its motion at the same term of the court at which the judgment was rendered, supported by affidavit, and having tendered an answer, duly verified, showing a complete defense to the plaintiff's action, we think that it would be an abuse of that wise discretion vested in the district court, and would prevent a failure of justice, to deny it a fair opportunity to be heard upon the merits of the issues tendered by its answer. While the president of the board was negligent in not informing the board of the service of summons, yet we do not think, under the circumstances of this case, that the board of education has been guilty of such negligence as should prevent it from a fair and full hearing of this cause upon its merits. If the allegations set up in its verified answer are true, it ought not to be compelled to pay this claim to the plaintiff below. We think, in the exercise of that wise discretion vested in the district court, it ought to have sustained the motion to vacate the judgment and allow the defendant below to file its answer and grant a new trial."

Pertinent also is the language of the Kentucky Court of Appeals in Columbia Coal & Mining Co. vs. Radcliff, 299 Ky. 596; 186 S.W. (2d) 419, as follows relative to a motion to set aside a default judgment:

"* * * where the motion is made at the same term at which the judgment is rendered, the court is unhampered by procedural rules and should afford any litigant who has not displayed indifference or gross neglect, an

opportunity to present a defense which on its face appears to be valid. As said in Vanover vs. Ashley, 298 Ky. 722; 183 S.W. (2d) 944, 945; 'The question is whether the ends of justice will be furthered by reopening the case in which one party has obtained a judgment without the other having been heard when he shows the court that prima facie he has a meritorious defense."

Where a judgment by default had been set aside by the trial court and complaint was made to the Supreme Court of Iowa of that ruling the court in Newell vs. Tweed 40 N.W. (2d) (Ia.) 20 said:

"It has been the holding of this court that where a party in good faith is shown to have intended to defend but fails to do so because of accident or excusable neglect the trial court is justified in setting aside the default and in permitting the pleading of a defense. Reilley vs. Kinkead 181 Ia. 615, 165 N.W. 80, Courts look with favor upon trials and the rights of a litigant should not be denied proper hearing by strict application of legal formalities. McMillan vs. Osterson 191 Ia. 983, 985; 183 N.W. 487; Allemang vs. White, 230 Ia. 526, 529; 298 N.W. 658. The sufficiency of the showing rests largely in the discretion of the trial court. Clarke vs. Smith, 195 Ia. 1299, 1302; 192 N.W. 136; Bossenberger vs. Bossenberger 210 Ia. 825, 827, 229 N.W. 833. The setting aside of a default by a trial court and the granting of a new trial will not ordinarily be disturbed on appeal when it is shown that the defendant apparently had a good defense, had honestly intended to present it and had justification for supposing that he had arranged for its presentation. Tate vs. Delli, 222 Ia. 635; 269 N.W. 871. This court has heretofore indicated a disposition to affirm the discretion exercised by a trial court in setting aside a default and such ruling will not ordinarily be disturbed in the absence of the abuse of this discretion." (citing cases).

The views of the Supreme Court of Montana relative to the disposition of judgments by default in that state have been recently set forth in Patterson vs. Patterson 120 Mont. 127; 179 P. (2d) 536, thus:

"It is the policy of the law to have every case tried on its merits. Reynolds vs. Gladys Belle Oil Co., 75 Mont. 332, 341 243 P. 576; Kosonen vs. Waara, 87 Mont. 24, 285 P. 668.

"Judgments by default are not favored. Madson vs. Petrie Tractor & Equipment Co., 106 Mont., 382, 77 P. (2d) 1038.

"Section 9187, Revised Codes of Montana 1935, empowers the court, in its discretion, upon timely application made, and upon such terms as may be just, to allow an answer to be made after the time limited by the Code and to relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect.

"In furtherance of justice, trial courts should, in applying the above statute to a given case, maintain and exercise that liberal spirit which prompted the Legislature to grant them this discretionary power, and, while this court will disturb the action of a trial court in opening default only in exceptional cases, 'no great abuse of discretion by the trial court in refusing to set aside a default need be shown to warrant a reversal.' " (citing cases).

"* * * Slight abuse of discretion in refusing to set aside a default judgment is sufficient to justify a reversal of the order. Madson vs. Petrie Tractor & Equipment Co., supra; Brothers vs. Brothers, 71 Mont. 378, 230 P. 60."

Mention has already been made that during the hearing of the motion to vacate the default judgment, the proposed answer of the defendant on the merits was tendered to the trial court, and that no oral sworn testimony or affidavit contrary thereto were forthcoming from the plaintiff. It is apparent that the third defense contained in the proposed answer of the defendant as above set forth if true certainly disclosed that defendant was misled into believing that the liability sought to be established by the action at bar had been settled and disclosed an excusable mistake of fact which should

relieve him of the default and entitle him to a trial on the merits of this lawsuit. 34 C.J. 310 § 528 says:

"A mistake of the party's counsel, as well as a mistake of his own, may be pleaded as excuse for a default and as a reason for opening the judgment, provided it was genuine and reasonable, and a mistake of fact rather than of law, such as counsels mistaking the case in which he was retained or becoming confused between several similar cases, or his misunderstanding of the real facts of the case or the circumstances of the transaction out of which the suit arose, or his erroneous impression that the action had been discontinued, or *settled."* (Italics supplied.)

49 C.J.S. 507, 508 § 280 (2) is to the same effect.

In General Accident, Fire & Life Assurance Corporation vs. Lacy et al 151 S.W. (Tex. Civ. App.) 1170 it is stated that:

"The record shows that the plaintiff in error, more than a month before expiration of the term of court at which the judgment by default in this case was taken, filed its application to open and set aside said judgment, and pleaded, as an excuse for making default, a compromise and settlement of the claim sued on and a promise on the part of the defendant in error to dismiss this case. This was a reasonable excuse for not appearing and answering the suit, and, together with allegations of compromise and settlement, showed good grounds for vacating the judgment."

The Supreme Court of Rhode Island in Fox vs. Artesian Well & Supply Co. 85 A. (R.I.) 937, 938 considering a similar situation as reviewed in the Lacy case supra, affirmed the ruling below where a default judgment had been set aside, the cause heard on its merits and the plaintiff had been non-suited, remarked:

"We think the superior court justice properly exercised his discretion in taking off the default in the above case, under the facts disclosed by the record, where it ap-

pears that the plaintiff had given a release of all damages arising from the alleged negligence of the defendant, between the date of service of the writ in the case and the time of filing the declaration; that the defendant informed its counsel that the case had been settled, prior to the time of filing pleas; and that by reason of such information counsel for defendant failed to file pleas, and defendant was defaulted. We find no abuse of discretion on the part of the superior court in vacating the judgment by default and reinstating the case for trial. The plaintiff was given full opportunity to try his case upon the merits, and to produce such testimony as he saw fit to offer to set aside the release; and if he did not see fit to avail himself of such opportunity, he cannot now complain. Plaintiff declined to offer any testimony at a trial of his case in the superior court, after the reinstatement and was nonsuited.

"Plaintiff's exception to the action of the superior court, in vacating the judgment in default and in reinstating the case for trial, is overruled, and the case is remitted to the superior court for entry of judgment for the defendant on the nonsuit."

A motion by plaintiff for a rehearing of the case was denied by the appellate court.

Under the authorities above reviewed and the circumstances in which we find the case at bar, it is our conclusion that the judgment refusing to vacate the default judgment herein embodies prejudicial error, and that the judgment from which this appeal is taken should be reversed, the cause remanded, defendant's proposed answer allowed to be filed and trial on the merits had on the issues raised by the necessary pleadings, after this direction has been followed.

Reversed and Remanded with Instructions.

KIMBALL, C. J., and BLUME, J., concur.