**Terry Kent SEELEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 96–337.

Supreme Court of Wyoming.

May 22, 1998.

James P. Castberg, Sheridan, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellant, convicted for felony possession of cocaine, alleges several errors by the district court. First, appellant claims the State presented insufficient evidence to support his conviction. Appellant also contends he was unfairly prejudiced by the admission of testimony describing a "white residue" on a plastic tray and a mirror found in his backpack. Finally, appellant alleges the district court denied him his constitutional right to be present and represented by counsel when it sent an "Allen-type" instruction to the jury room during deliberations. We find appellant's evidentiary claims without merit, but hold the district court erred in instructing the jury without the defendant present. However, we find beyond a reasonable doubt that the error was not prejudicial.

Affirmed.

## I. ISSUES

Appellant, Terry Kent Seeley (Seeley), submits the following statements for review:

### ISSUE I

The trial court erred in denying the appellant's motion for judgment of acquittal on the grounds that the State failed to present reliable evidence upon which a jury could find the appellant guilty beyond a reasonable doubt.

### ISSUE II

The trial court erred in its ruling on the appellant's motion in limine on the admissibility of testimony concerning the plastic tray and mirror.

### ISSUE III

The trial court erred in giving Instruction No. 15 to the jury without allowing attorney for appellant to make objection upon the record before the instruction was given.

### ISSUE IV

The trial court erred in giving Instruction No. 15 to the jury without the appellant and his attorney being present.

### ISSUE V

The trial court erred in depriving the appellant of his right to counsel by giving Instruction No. 15 to the jury without the appellant being present with his attorney.

### ISSUE VI

The court erred in denying the appellant's motion for judgment of acquittal following the verdict of "guilty" by the jury[.]

The State, as appellee, responds:

I. Did the district court properly deny appellant's oral motion for judgment of acquittal at the close of the State's case in chief?

II. Did the trial court err in allowing testimony regarding the plastic tray and mirror found in appellant's backpack?

III. Did the trial court commit reversible error in giving Instruction No. 15 or in denying appellant's post-verdict motion regarding that instruction?

## II. FACTS

On January 26, 1996, Seeley met a former acquaintance, Thomas Ellis (Ellis), while drinking at a Casper, Wyoming bar. The two drove a Blazer loaned to Seeley by another friend to continue the festivities at a "house party" after the bar closed. During the course of the evening, Seeley suggested that Ellis accompany him to Sheridan, Wyoming, where Seeley planned to discuss the sale of some used oil pipe to a prospective customer. Ellis agreed, and at approximately 5:00 a.m. they left the party and drove the Blazer to Sheridan.

When they arrived in Sheridan, they stopped at the home of another friend of Seeley's, Matt Eisele (Eisele). After visiting with Eisele, the duo proceeded to a motel to get a room and sleep. When they awoke, they telephoned Eisele who came to the motel while Seeley and Ellis were preparing to go out. Seeley asked Eisele to bring in

Seeley's black backpack from the Blazer so Seeley could change into clean clothes. Eisele brought the backpack into the motel room without opening it while Seeley replaced the backpack in the Blazer before leaving the motel.

The three spent the afternoon and evening at several local drinking establishments, using the Blazer for transportation. During this time, Seeley asked Eisele to go out to the Blazer to retrieve money and credit cards from the backpack. Eisele could not remember "for sure," but believed he located the objects in "[o]ne of the side pouches."

Around ten o'clock that night, the three men arrived at the bar in the Holiday Inn. While there, Ellis went to a car belonging to two females he had met that evening to do "a couple of lines of cocaine." Between midnight and one o'clock, Ellis asked Eisele, who drove the Blazer to the Holiday Inn, for the keys to drive yet another young woman he had met to her home. After securing Seeley's permission, Eisele gave the keys to Ellis.

As Ellis drove to the woman's residence, Sheridan police officer Trevor Martin noticed the Blazer was speeding and appeared to be weaving. Officer Martin followed the Blazer for several blocks, observing two people inside the vehicle, but noting no suspicious movement or "reaching." Officer Martin activated his emergency lights and stopped the Blazer about one block later.

When Officer Martin asked for a driver's license, Ellis stated he had no identification with him and gave his name as Pierre LaBarr and a birth date. Because the birth date placed Ellis at thirteen years old, Officer Martin suspected the information was false. At that point, Officer Martin ran a check on "Pierre LaBarr" and on the license plates. When the license plate check revealed that the Blazer was owned by a Casper resident, Officer Martin called dispatch to determine if the owner knew "LaBarr." Dispatch was not able to contact the owner, but spoke to the owner's son who stated his father did not know Pierre LaBarr.

Suspecting the Blazer may have been stolen and Ellis had been drinking, Officer Mar-

tin asked Ellis to step out of the Blazer and perform roadside maneuvers to test for intoxication. . Failing this test, Ellis was placed under arrest for driving under the influence. Officer Martin then found identification with Ellis' name and picture, and after running a check on that name, Officer Martin learned there was an outstanding warrant for Ellis' arrest.

With growing suspicion that the Blazer may have been stolen, Officer Martin directed two other police officers who had arrived on the scene to check the vehicle. Shortly thereafter, one of the officers returned, stating he found what may be narcotics in a backpack located in the back seat of the Blazer. Upon investigation, Officer Martin saw a "black package directly behind the driver's seat * * *." In the main compartment of the backpack, he found a plastic tray and a shaving kit which contained a broken mirror. Both the tray and mirror were coated with "a white residue * * *." In another compartment, the officers found four "individually packaged plastic baggies" containing a "white powdery, chunky substance." The baggies were found intermingled with pieces of paper and receipts bearing Seeley's name.

Eventually, Ellis was escorted to the police station and his female companion was allowed to continue home. After reaching the police station, Officer Martin contacted the Wyoming Division of Criminal Investigation (DCI) to request an agent for further investigation.

In the meantime, Eisele and Seeley waited for Ellis to return to the bar. When almost everyone had left and Ellis still had not returned, Eisele arranged a ride for himself and Seeley with another friend. They went back to the motel where Eisele stayed until approximately 3:30 a.m. Eisele called the police station, but was informed Ellis was not there.

The next day, the DCI agent assigned to the case arrived at the police station and continued to search the Blazer. A box of plastic sandwich bags similar to the drug packages were found in the luggage compartment. Learning that Eisele had called the police station looking for Ellis, the agent interviewed Eisele and then went to the mo-

tel to talk with Seeley. When the agent informed Seeley that cocaine had been found in the backpack, Seeley admitted he owned the backpack but denied ownership of the drugs.

Tests on the substance found in the packages returned positive for the presence of cocaine. Seeley was required to submit a urine sample which also tested positive for cocaine. Although the substance found in the backpack could not be directly connected to the cocaine consumed by Seeley, there was testimony that Seeley's consumption would likely have been within two to four days of testing.

On August 28 and 29, 1996, Seeley was tried before a jury on one count of felony possession of a controlled substance. At the close of the State's case, Seeley moved for a judgment of acquittal, contending the State had failed to present sufficient evidence to support a conviction. The district court denied the motion.

At some point during deliberation, the jury notified the district court that it was having difficulty reaching a verdict. Although there is a dispute as to what actually occurred, it is uncontested that the district court sent Instruction No. 15 to the jury room during deliberation without bringing the jury into the courtroom.[1] Less than two hours after

receiving this instruction, the jury returned with a verdict finding Seeley guilty of the charged offense. The jurors were then individually polled to confirm their agreement with the verdict.

After securing the services of a new attorney, Seeley filed two post-trial motions for judgment of acquittal. The first motion sought a judgment of acquittal due to error in the instruction of the jury.[2] The motion was supported by Seeley's affidavit alleging that, upon information from his trial counsel, the district court submitted Instruction No. 15 without allowing his counsel the opportunity to object, and the instruction was given outside the presence of Seeley and his counsel.

In response, the State took issue with factual allegations found in Seeley's affidavit and attached a page of the trial transcript, which states:

(Whereupon the Jury retired to the jury room to begin deliberations at 11:15 a.m.)

(Whereupon while the Jury was involved in deliberations *Jury Instruction Number 15 was stipulated to by counsel and in the presence of the official court reporter to be submitted to the Jury panel.*)

---

1. The full text of Instruction No. 15 is as follows:

 Ladies and gentlemen, the bailiff informed the court at about 4:10 p.m. 8–29–96 that you report difficulty reaching an agreement. If you fail or are unable to agree, of course there will of necessity be another trial to a jury of 12 men and women who are no more intelligent, impartial or competent than yourselves, who would have the same responsibility, under the same oath, who would hear the evidence with the same attention and with an equal desire to arrive at the truth.

 You have already been instructed that your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

 The jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to your individual judgments. As jurors, each of you must decide the case for yourselves, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, you should not hesitate to reexamine your own views and change your opinion if convinced it is errone-

 ous. However, no juror should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of a fellow juror, or for the mere purpose of returning a verdict.

 You are the judges of the facts of this case and your sole interest is to ascertain the truth from the evidence.

 The Court requests you to deliberate further in an atmosphere of mutual deference and respect, giving due consideration to the views of your fellow jurors in the knowledge that your verdict must reflect the views of all. Your attention is specifically called to all of the other instructions given to you in this case, including those relating to the presumption of innocence, the burden of proof beyond a reasonable doubt, and the instruction I have just given you is to be considered with all the other instructions in this case.

2. The discrepancy between a motion for acquittal pursuant to W.R.Cr.P. 29 and a motion for a new trial pursuant to W.R.Cr.P. 33 is not at issue here.

(Whereupon the following proceedings commenced at 6:18 p.m. in open court.) [The jury returned with its verdict]

(Emphasis added.)

Seeley's second post-trial motion alleged lack of evidence, the same motion heard and rejected by the district court at the close of the State's case. The district court denied both posttrial motions without a hearing on September 26, 1996. In its order, the district court specifically found that prior to sending Instruction No. 15 to the jury, the district court consulted with counsel for Seeley and the State, and both counsel stipulated to the instruction. The district court further found that it would have given the instruction despite objection from either party and that Seeley was not prejudiced thereby.

Seeley was sentenced on November 1, 1996 to serve not less than five nor more than seven years at the Wyoming State Penitentiary. On the same day Seeley was sentenced, an affidavit in support of defendant's motion for acquittal signed by Seeley's trial counsel was inexplicably filed with the district court. In his affidavit, Seeley's trial counsel denied stipulating to Instruction No. 15. This timely appeal followed.

### III. STANDARD OF REVIEW

■ We review Seeley's challenge to the sufficiency of the evidence by determining whether all the evidence presented is adequate to form the basis for a reasonable inference of guilt beyond a reasonable doubt by the finder of fact. *Sutherland v. State,* 944 P.2d 1157, 1160 (Wyo.1997) (*quoting Bloomquist v. State,* 914 P.2d 812, 823–24 (Wyo. 1996)). We view the evidence in the light most favorable to the state, affording every inference to be reasonably and fairly drawn, and do not consider conflicting evidence presented by the unsuccessful party. *Bloomquist,* 914 P.2d at 823–24. Though it may be possible to draw other inferences, it is the responsibility of the jury to resolve such conflicts and we will not substitute our judgment for that of the jury. Our sole duty is to ascertain "whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.* at 824.

■ The admission or exclusion of evidence is within the sound discretion of the district court, and the district court's determination will not be disturbed absent a clear abuse of discretion. *Fortner v. State,* 932 P.2d 1283, 1286 (Wyo.1997).

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances."

*Id.* (*quoting Pearson v. State,* 811 P.2d 704, 707 (Wyo.1991)).

■ The question of whether a defendant had the right to be present at a specific phase of his trial is an issue of law and, as such, is subject to *de novo* review. *United States v. Gomez,* 67 F.3d 1515, 1528 (10th Cir.1995), *cert. denied,* 516 U.S. 1060, 116 S.Ct. 737, 133 L.Ed.2d 687 (1996); *Larson v. Tansy,* 911 F.2d 392, 394 (10th Cir.1990).

### IV. DISCUSSION

#### A. ADMISSION OF EVIDENCE

■ Seeley claims the district court erred in permitting officers to testify that a "white residue" was seen on the mirror and the tray in the backpack. Prior to trial, the district court limited the officers' testimony to a physical description of the tray and mirror at the time of discovery, precluding any mention of the results of field tests which could not be confirmed. Seeley now asserts that the mere physical description of these items was unfairly prejudicial because it allowed the jury to improperly infer that the substance was cocaine, which in turn allowed the improper inference that the cocaine found in the backpack also belonged to the defendant.

■ Seeley correctly reminds us that the jury's inferences must be based on more than speculation and conjecture, and that we must guard against a conviction obtained by adding inference to inference. *United States*

*v. Jones,* 44 F.3d 860, 865 (10th Cir.1995). However, we do not find that testimony regarding the physical appearance of the tray and the mirror invited unwarranted conjecture. A permissible inference has been described as follows:

> An inference is a process of reasoning by which a fact or proposition is deduced fairly and logically from other facts proven or admitted. An inference is truly evidence. The weight to which it is entitled depends upon the facts and circumstances of each case * * *.

*Story v. State,* 721 P.2d 1020, 1025 (Wyo.), *cert. denied,* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986). There must be some connection between the proven fact and the inference drawn from it. *Cloman v. State,* 574 P.2d 410, 417 (Wyo.1978).

In this case, the proven facts are that a "white residue" was seen on objects commonly associated with drug use. These items were discovered in a backpack belonging to Seeley which contained four bags of white powder. Both Seeley and the white powder in the bags tested positive for cocaine. The inference that the substance on the mirror and tray may be cocaine is certainly a reasonable deduction from the surrounding circumstances. We find no abuse of discretion in the district court's careful consideration of the evidence and its conclusion that the probative value was not substantially outweighed by the potential for unfair prejudice.

**B. SUFFICIENCY OF THE EVIDENCE**

■ Seeley next argues the State failed to present sufficient evidence that he "possessed" the cocaine found in his backpack and, therefore, the district court erred in denying his motion for acquittal. To convict for possession of illicit drugs, the prosecution must establish that Seeley: (1) either individually or jointly with another exercised dominion and control over the substance; (2) had knowledge of its presence; and (3) had knowledge that the substance was a controlled substance. *Saldana v. State,* 846 P.2d 604, 620 (Wyo.1993); *Wise v. State,* 654 P.2d 116, 119 (Wyo.1982). It is not necessary to offer direct evidence of the defendant's actual possession of the contraband.

"[C]ircumstantial evidence linking together a series of facts" allowing a reasonable inference that the defendant had the requisite control and knowledge of the substance is sufficient to show constructive possession. *Wise,* 654 P.2d at 119. The court must consider the totality of the circumstances when determining whether sufficient evidence was presented to allow the jury to infer that the defendant had the requisite control and knowledge of the contraband. *Urrutia v. State,* 924 P.2d 965, 967 (Wyo.1996).

■ Viewing the evidence in the light most favorable to the prosecution, we find sufficient evidence was presented to establish a prima facie case from which the jury could reasonably infer that Seeley had constructive possession of the cocaine. Seeley's control of the backpack is supported by his admission that he owned the backpack and had packed it himself. Eisele testified that Seeley directed him to retrieve the backpack from the Blazer at the motel, then Seeley unpacked, re-packed, and returned it to the Blazer.

■ The evidence was also sufficient to show that Seeley knew the cocaine was present. In addition to the control of the backpack noted above, the discovery of the mirror, the tray, the contraband and the similar packaging, all found in discrete areas of the backpack and Blazer, sufficiently negates the claim that someone else placed the contraband in the backpack without Seeley's knowledge. Finally, Seeley tested positive for cocaine use within close temporal proximity to his trip to Sheridan.

Seeley contends that because the State could not prove that the cocaine found in his system was the same cocaine discovered in the backpack, there is no evidence to show that he knew his backpack contained a controlled substance. The evidence discussed above, however, allows the jury to reasonably conclude that Seeley possessed what he knew to be a controlled substance in his backpack. The district court did not err in denying Seeley's oral and written motions claiming insufficient evidence.

## C. INSTRUCTION NO. 15

 Seeley raises several issues concerning the procedure by which Instruction No. 15 was submitted to the jury. This instruction is commonly referred to as an "Allen-type" instruction, a term used to describe an instruction which urges continued deliberation when the jury is temporarily unable to come to an agreement regarding guilt or innocence. *Hoskins v. State*, 552 P.2d 342, 347 n. 7–8 (Wyo.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Generally, the concern raised by such instruction is the possibility that a juror voting in the minority may feel coerced into abandoning beliefs honestly held and succumb to the will of the majority in order to reach a unanimous decision. *Smith v. State*, 564 P.2d 1194, 1201 (Wyo.1977). Thus, the content of such instructions are carefully reviewed.

In this case, however, Seeley essentially concedes that the substance of the instruction was not coercive. Instead, Seeley claims reversible error because the communication from the jury was not reduced to writing, the court's response was not delivered in open court, and defense counsel was allegedly denied the opportunity to object. He contends that this procedure deprived him of his constitutional and statutory right to counsel and his right to be present at all material stages of his trial. Wyo. Stat. § 7–11–202 (1997); W.R.Cr.P. 43. He also alleges the district court's actions erroneously depart from procedural rules for instruction to the jury. W.R.Cr.P. 30; W.R.C.P. 51.

The State argues there is no factual basis to support Seeley's claim that defense counsel was denied the chance to object to Instruction No. 15. We agree. Although Seeley relies on his trial counsel's affidavit, it is too little too late to raise as an issue for appeal. Trial counsel's affidavit was filed long after the district court had denied Seeley's motion and resolved any alleged inaccuracies in the trial record. Since Seeley's presence was not required at the instruction conference, *Lobatos v. State*, 875 P.2d 716, 724 (Wyo.1994), this claim is without merit.

 Of more substance is Seeley's contention that the district court denied See-ley his constitutional right to be present with counsel during jury instruction. The Sixth Amendment and the due process clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States are held to guarantee an accused the right to be present during every stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure. *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). Wyo. Const. art. 1, § 10 "is even more explicit in its guarantee to an accused of the right of presence at trial * * *." *Maupin v. State*, 694 P.2d 720, 722 (Wyo.1985).

> " 'The right to be present at trial stems in part from the fact that by his physical presence the defendant can hear and see the proceedings, can be seen by the jury, and can participate in the presentation of his rights. * * *' *Bustamante v. Eyman*, 456 F.2d 269, 274–275 (9th Cir.1972)."

*Maupin*, 694 P.2d at 723. These constitutional guarantees are incorporated into Wyo. Stat. § 7–11–202 and W.R.Cr.P. 43(a), which provide that a defendant shall be present "at every stage of the trial * * *."

 Jury instruction is generally held to be a point in the criminal proceeding which warrants the presence of the defendant. *Maupin*, 694 P.2d at 723; *see also Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975); *Larson*, 911 F.2d at 394; and *United States v. Fontanez*, 878 F.2d 33, 35 (2nd Cir.1989). However, the due process right to be present is not unequivocal. The defendant's presence is not required when it "would be useless, or the benefit but a shadow." *Snyder v. Com. of Mass.*, 291 U.S. 97, 106–07, 54 S.Ct. 330, 332–33, 78 L.Ed. 674 (1934).

Relying primarily on our holding in *Carlson v. Carlson*, 888 P.2d 210, 215 (Wyo.1995), the State suggests that Instruction No. 15 may be considered an "administrative directive" rather than an instruction on the law, and therefore Seeley's presence was not required. In *Carlson*, the jury sent a message to the district court, which responded

without informing counsel or preserving a record. *Id.* at 212. Evidence at a post-trial hearing showed that the jury's question was whether it may add comments to the verdict form. *Id.* The district court's response was: "fill out the * * * form." *Id.* at 213.

On appeal, we recognized that some communication between the district court and the jury may be conducted informally, and will be found erroneous only if the defendant shows he was prejudiced thereby. *Id.* at 215. Communications not addressed by rule or statute, i.e., those communications which are "not * * * [an] instruction[ ] on the law," may be considered outside the parameters of W.R.C.P. 51 and the statutes relating thereto. *Carlson*, 888 P.2d at 214–15. We concluded that the communication in *Carlson* constituted an "administrative directive" and was not substantially prejudicial to any party. Consequently, no error was found. *Id.* at 215.

An "Allen-type" instruction, however, does not fall into the same category as the district court's message in *Carlson*. Merely because the subject matter of the communication is not a direct comment on the law or its application to the pending case does not automatically render the communication an "administrative directive."

Providing guidance in this area is *Acree v. Minolta Corp.*, 748 F.2d 1382, 1385 (10th Cir.1984), where the Tenth Circuit Court of Appeals distinguished between permissible and impermissible ex parte communication between the district court and the jury:

> The trial court's explanation did not instruct the jury on what the law is or on how to apply the law to the evidence. *Nor did it instruct the jury on how to conduct itself. It merely gave the jury collateral information that did not affect its deliberation.* Accordingly, the answer to the jury's question regarding the police report was an administrative direction.

(Emphasis added.)

Instruction No. 15 was clearly intended to instruct the jury on how to conduct itself and to "affect" the jury's deliberation. Indeed, the entire instruction covered over one typewritten page and emphasized the importance

of *that* jury's deliberations toward reaching a unanimous decision. An "Allen-type" instruction is not equivalent to a direction to "fill out the * * * form" nor is it of the same quality as communications found to be "ministerial" in other jurisdictions. *See Allen v. Indiana*, 686 N.E.2d 760, 782 (Ind.1997); *State v. Mims*, 222 Kan. 335, 564 P.2d 531, 536 (1977); and *People v. Smith*, 204 A.D.2d 748, 612 N.Y.S.2d 452, 452 (1994).

Consequently, we find that the district court erred in submitting Instruction No. 15 to the jury outside the presence of the defendant and his counsel. However, the error, even though of constitutional proportion, is subject to a harmless error analysis. *Gomez*, 67 F.3d at 1528. Before a federal constitutional error can be held harmless, the court must be able to declare its belief that the error was harmless beyond a reasonable doubt. *Price v. State*, 807 P.2d 909, 917 (Wyo.1991) (Cardine, J., specially concurring); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In determining whether reversible error occurred, we ask if the defendant's absence created any reasonable possibility of prejudice. *Fontanez*, 878 F.2d at 37 (*quoting United States v. Toliver*, 541 F.2d 958, 965 (2nd Cir.1976)); *State v. Hannagan*, 559 P.2d 1059, 1065 (Alaska 1977). The State must show that an error can pass muster under this standard. *Chapman*, 87 S.Ct. at 828. We find the State has done so in this case.

We begin by reviewing the content of the instruction. The only information not contained in the jury's initial instructions is found in the first paragraph of Instruction No. 15, and this new information is presented in language previously approved by this court. *Hoskins*, 552 P.2d at 348. Further, Instruction No. 15 is not coercive in that the instruction repeatedly admonished the jury not to sacrifice their honestly held beliefs to the majority. Further, the instruction specifically called the jury's attention to the previous instructions on the presumption of innocence and the State's burden to prove guilt beyond a reasonable doubt. Thus, the instruction did not substantially tend to pry jurors from their honestly held beliefs or unduly intrude into the jury's decisional

province. Neither did Instruction No. 15 express disapproval of the jurors' position, push the jury to rush to verdict, nor otherwise dilute the requirement of unanimity. *See Smith,* 564 P.2d at 1201 and *Hoskins,* 552 P.2d at 346–49.

We are not unmindful of the defendant's due process right to be present to exert a "psychological influence" on the jury. *See Maupin,* 694 P.2d at 723; *Larson,* 911 F.2d at 396; *Fontanez,* 878 F.2d at 38; and *Hazel v. United States,* 599 A.2d 38, 47 (D.C.App. 1991), *cert. denied,* 506 U.S. 939, 113 S.Ct. 374, 121 L.Ed.2d 286 (1992). However, courts which have considered the psychological impact of the defendant's presence have focused on the negative influence which may be created by the defendant's "empty chair." That concern is not present in this case since the jury received the written Instruction No. 15 in the jury room, and therefore was not exposed to an empty chair. We further note that Seeley was present to exert his psychological influence when the jury returned its verdict and each juror was individually polled to confirm their agreement with the verdict.

In *Hoskins,* 552 P.2d at 346, we strongly approved giving an instruction similar to that at issue here at the close of the case with all other instructions. We take this opportunity to reiterate this preference and emphasize again that a defendant has a right to be present with counsel when such instruction is given. However, we are convinced beyond a reasonable doubt that, in this case, Seeley was not prejudiced by the district court's action.

## V. CONCLUSION

The district court did not abuse its discretion in denying Seeley's motion for acquittal. Testimony relating the direct observation of a "white residue" on objects normally used for the ingestion of cocaine did not permit inferences based on speculation and conjecture. The evidence presented at trial clearly established a prima facie case of felony possession.

The district court erred when it submitted an "Allen-type" instruction to the jury in Seeley's absence. However, we find that the

totality of the circumstances render the error harmless beyond a reasonable doubt.

Seeley's conviction is affirmed.