# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 36

**OCTOBER TERM, A.D. 2015**

**March 11, 2016**

CASEY J. CARTER,

Appellant
(Defendant),

v.

S-15-0137

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*

> *Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Diane E. Courselle, Director, and Samuel Forshner, Student Intern, Defender Aid Program, College of Law, University of Wyoming. Argument by Mr. Forshner.*

*Representing Appellee:*

> *Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General. Argument by Ms. Young.*

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

*BURKE, C.J., delivers the opinion of the Court; DAVIS, J., files a specially concurring opinion.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    The jury in Casey J. Carter's trial for felony interference with a peace officer deliberated approximately four hours before it informed the district court it was deadlocked.  The district court provided the jurors with a supplemental instruction urging them to continue deliberating.  A short time later, the jury returned a guilty verdict.  On appeal, Mr. Carter claims that the district court's supplemental instruction improperly coerced the jury, and that he was denied effective assistance of counsel because his attorney did not object to the instruction.  We affirm.

## *ISSUES*

[¶2]    Mr. Carter presents two issues:

> 1.    Was the supplemental jury instruction coercive?
>
> 2.    Was Mr. Carter denied his right to effective assistance of counsel because his attorney failed to object to the supplemental instruction?

## *FACTS*

[¶3]    Mr. Carter's trial began at 8:30 a.m.  After the jury was selected and opening statements were given, the court recessed for lunch.  At 1:00 p.m., the prosecution began presenting its case.  It called two witnesses, police officers Ryan Mahylis and Eric Small, who had arrested Mr. Carter in his home.  Both testified that when Mr. Carter was informed he was being arrested, he swung a fist at Officer Mahylis.  Officer Mahylis ducked the punch, but was taken into a headlock by Mr. Carter.  The officer broke away, and the two officers "took [Mr. Carter] to the ground."

[¶4]    Defense witnesses provided a different version of the incident.  Enrique Ibarra, Mr. Carter's friend and roommate, observed the arrest.  He testified that when Mr. Carter was told he was being arrested, he started to leave to get his medication.  One of the officers grabbed his arm, and Mr. Carter "reacted" by jerking it away.  The officers then took him "down to the floor."  Mr. Carter testified as follows in his defense:

> As I stepped forward one officer startled me because he grabbed my left hand from behind and I pulled back because it shocked me a little bit, and as soon as I pulled, the other officer grabbed my right arm and the next thing I know I was on the ground.

[¶5]    Ultimately, the case was submitted to the jury.  The jury was instructed that it

1

must determine whether Mr. Carter was guilty or not guilty of felony interference with a peace officer in violation of Wyo. Stat. Ann. § 6-5-204(b) (LexisNexis 2013).[1] The jury was also instructed that, if it did not find Mr. Carter guilty of interference with a peace officer, it could consider the lesser included misdemeanor offense of resisting arrest in violation of Wyo. Stat. Ann. § 6-5-204(a).[2] The jury began its deliberations at about 4:00 p.m.

[¶6] Shortly after 7:30 p.m., the district court learned that the jury had indicated to the bailiffs that it was deadlocked. The district court informed the prosecutor, the defense attorney, and Mr. Carter that the jury had told the bailiffs they were "11 to 1 on the top verdict, 12, 0 on the bottom verdict." When the bailiffs asked if the jury wanted to go home or continue deliberating, the jurors said "it wouldn't make any difference, it would still be the same." After discussion with counsel, at around 8:30 p.m., the district court instructed the jury as follows:

> Ladies and gentlemen, . . . about 7:35 I received a phone call indicating that you all were at an impasse and you were having difficulty reaching an agreement and so I'm going to give you one supplemental instruction and ask you to return to continue your deliberations.
>
> If you find that, if you reach agreement obviously let the bailiffs know but if you don't and believe it would be beneficial to break for the evening, again please let the bailiffs know and they can get that message to us, and I'll give you this following instruction and then ask you to retire to the jury room and continue your deliberations.
>
> Ladies and gentlemen, you have already been instructed that in order to return a verdict each juror must agree thereto. The jurors have a duty to consult with one another and to deliberate with a view to reaching an

---

[1] The statute provides: "A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years."

[2] The statute provides: "A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties."

agreement if it can be done without violence to your individual judgments.

Each juror must decide the case for himself but only after – or herself, I'm sorry, but only after an impartial consideration of the evidence with his or her fellow jurors. In the course of your deliberations, a juror should not hesitate to reexamine his or her own views and change his or her own opinion if convinced that it is erroneous.

However, no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict. The court requests that you deliberate further in an atmosphere of mutual deference and respect giving due consideration to the views of your fellow jurors in the knowledge that your verdict must reflect the views of all.

Your attention is specifically called to all of the other instructions given to you in this case including but not limited to those relating to the presumption of innocence, the burden of proof, and the requirement that guilt must be established beyond a reasonable doubt. And the instruction that I have just given you is to be considered with all other instructions that I've previously given you in this case.

With that additional instruction, I'll ask you to continue your deliberations, and if you have questions or need to communicate, that you need to agree to leave for the evening or you've reached a decision please contact the bailiffs, and with that, I'll excuse the jury to the deliberation room.

Defense counsel did not object to the instruction. At approximately 9:15 p.m., the jury returned a guilty verdict on the charge of felony interference with a peace officer. This timely appeal ensued.

## *STANDARD OF REVIEW*

[¶7] When a defendant fails to object to the giving of the jury instruction at issue, we review for plain error. *Mendoza v. State*, 2013 WY 55, ¶ 11, 300 P.3d 487, 490 (Wyo. 2013). Plain error exists when the record is clear about the incident alleged as error, there

3

was a transgression of a clear and unequivocal rule of law, and the party claiming the error was denied a substantial right which materially prejudiced him. *Id*. Because the jury instruction at issue appears in the record, we need to consider only the latter two parts of the plain error analysis.

## DISCUSSION

[¶8]   The supplemental instruction given in this case "is commonly referred to as an '*Allen*-type' instruction, a term used to describe an instruction which urges continued deliberation when the jury is temporarily unable to come to an agreement regarding guilt or innocence." *Seeley v. State*, 959 P.2d 170, 177 (Wyo. 1998) (italics added).  As we noted in *Elmer v. State*, 463 P.2d 14, 21 (Wyo. 1969), it is called an *Allen*-type instruction "since an instruction along that line was approved by the United States Supreme Court many years ago" in the case of *Allen v. United States*, 164 U.S. 492, 501-02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).  Instructions of this type have a long history of being used in Wyoming trials when the jury appeared to be deadlocked, and we have upheld them as proper. *Harris v. State*, 23 Wyo. 487, 513-14, 153 P. 881, 889-90 (1916); *Nicholson v. State*, 24 Wyo. 347, 356-57, 157 P. 1013, 1015-16 (1916).

[¶9]   Interestingly, we have disapproved of the actual jury instruction at issue in *Allen*,[3] noting that this instruction "is generally in disrepute and at least controversial amongst the courts of the land because of its appeal to the minority to bow to the majority." *Hoskins v. State*, 552 P.2d 342, 347 n.8 (Wyo. 1976).  We have accepted "the legal proposition that an instruction given at a time when it appears a jury may be deadlocked, referred to as an *Allen* type, must not have a coercive impact upon the jury." *Id*. at 347 (footnote omitted).  In furtherance of that proposition, we have recognized that "[c]ommunications from a judge to a jury are coercive when they possess the substantial propensity for prying minority jurors loose from beliefs they honestly have, constitute an undue intrusion into the jury's province and dilute the requirement of unanimity." *Id*. at 347-48.

[¶10] But while disapproving of the actual instruction at issue in *Allen*, we have upheld the use of an *Allen*-type instruction.  In *Hoskins*, the *Allen*-type instruction provided:

---

[3] The instruction in *Allen* informed the jurors, among other things, that "if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself," and that if, "upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." *Allen*, 164 U.S. at 501, 17 S.Ct. at 157.

4

Ladies and gentlemen, it is our understanding that you are having difficulty reaching an agreement. As you know, this is an important case to the defendant and the State. This trial has been expensive even though short. If you fail or are unable to agree, of course, there will be the necessity of choosing another jury, twelve people, no more intelligent than you are, no more impartial, or no more competent. They have [sic] the same responsibility, under the same oath, who [sic] would hear the evidence with the same attention with an equal desire to arrive at the truth.

You have already been instructed that in order to return a verdict, each juror must agree thereto. The jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to your individual judgments. Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors. In the course of your deliberations a juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced that it is erroneous. However, no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors, or for the mere purpose of returning a verdict. The Court requests you to deliberate further in an atmosphere of mutual deference and respect, giving due consideration to the views of your fellow jurors in the knowledge that your verdict must reflect the views of all.

Your attention is specifically called to all of the other instructions given to you in this case, including those relating to the presumption of innocence, the burden of proof, and the requirement that guilt must be established beyond a reasonable doubt, and the instruction I have just given you is to be considered with all other instructions in this case.

*Id*., 552 P.2d at 344-45 (quotation marks omitted).

[¶11] We noted that this instruction was based on a standard appearing in the 1968 Approved Draft of the American Bar Association of Standards Relating to Trial by Jury. *Id*. at 346. We approved of the standard appearing at page 145 of that document, which states:

5.4 Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

*Hoskins*, 552 P.2d at 346 (quotation marks omitted). We determined that the instruction given in *Hoskins* was "consistent with that high standard" and "used the very language of the standard." *Id.* We expressly approved of its use in that case.

[¶12] We later emphasized that "we strongly approved" of the *Hoskins* instruction. *Seeley*, 959 P.2d at 179. Considering an instruction very similar to the one given in

*Hoskins*, we noted that "the concern raised by such instruction is the possibility that a juror voting in the minority may feel coerced into abandoning beliefs honestly held and succumb to the will of the majority in order to reach a unanimous decision." *Seeley*, 959 P.2d at 177. However, examining the content of the instruction, we concluded it was

> not coercive in that the instruction repeatedly admonished the jury not to sacrifice their honestly held beliefs to the majority. Further, the instruction specifically called the jury's attention to the previous instructions on the presumption of innocence and the State's burden to prove guilt beyond a reasonable doubt. Thus, the instruction did not substantially tend to pry jurors from their honestly held beliefs or unduly intrude into the jury's decisional province. Neither did [the instruction] express disapproval of the jurors' position, push the jury to rush to verdict, nor otherwise dilute the requirement of unanimity.

*Id.* at 178-79. We were "convinced beyond a reasonable doubt" that Mr. Seeley "was not prejudiced" by the instruction. *Id.* at 179.

[¶13] In Mr. Carter's case, the *Allen*-type instruction was based on the jury instruction given in *Hoskins*. Reviewing the language of the *Hoskins* instruction, the district court noted that the first paragraph of that instruction informed the jury that the trial had been "expensive although short," and if the jury was unable to agree, "of course, there will be the necessity of choosing another jury, 12 people, no more intelligent than you, et cetera." Both counsel asserted that it was unnecessary to use the first paragraph of the instruction from *Hoskins*, and the district court agreed that this paragraph was "by far the most coercive part of that jury instruction and at this time I find that would be premature." Accordingly, the district court provided the jury with the latter portion of the *Allen*-type instruction from *Hoskins*, leaving out the more coercive first paragraph.

[¶14] The instruction given in Mr. Carter's case is the same in substance as the instructions we approved of in *Hoskins* and *Seeley*. It is very nearly identical, word for word, to the latter part of the *Hoskins* instruction. It is consistent with the ABA Standard we approved of in *Hoskins*. Mr. Carter faces a difficult challenge in his effort to convince us that the instruction was unduly coercive in his case.

[¶15] Mr. Carter attempts to distinguish his case because the instruction was given to the jury at around 8:30 p.m. He argues that, "[g]iven how late in the evening the supplemental instruction was given, it also sent the implicit message that the jurors were not going home any time soon unless they reached a verdict." The State counters that we have previously upheld instructions given at even later hours. In *Bell v. State*, 994 P.2d 947, 952-53 (Wyo. 2000), for example, a similar instruction was given at 8:44 p.m. and

7

again at 9:50 p.m., after nearly nine hours of jury deliberation. *See also Elmer*, 463 P.2d at 20-21 (approving of an *Allen*-type instruction given at 10:00 p.m. after the jury had deliberated nearly eleven hours). In Mr. Carter's case, the jury had been deliberating less than four hours, and the hour was not notably late. We note further that the district court in *Bell*, 994 P.2d at 953, told the jury there would be no overnight accommodations for the jurors, possibly suggesting that the jury needed to reach a verdict before the jurors could go home. The district court in Mr. Carter's case explicitly told the jurors that if they "believe[d] it would be beneficial to break for the evening, again please let the bailiffs know and they can get that message to us." We conclude that the instruction given in Mr. Carter's case was not unduly coercive because of the time when it was read to the jury.

[¶16] Mr. Carter also points out that in his case, unlike *Hoskins* or *Seeley*, the judge and the parties knew how the jurors had voted. He asserts that the district court should have known that the lone juror voting to acquit him on the charge of felony interference with a peace officer would be unduly coerced by the instruction, particularly the admonition that "a juror should not hesitate to reexamine his or her own views." Furthermore, Mr. Carter maintains, the jurors were aware that the judge knew how they had voted. He claims that the jury as a whole, and the holdout voter in particular, would interpret the instruction as being directed specifically at the holdout juror, thus "coercing her to acquiesce and capitulate under the intense pressure of not just her fellow jurors, but of the court as well."

[¶17] As a preliminary matter, we note that the bailiffs should not have told the judge how the jurors had voted. Wyo. Stat. Ann. § 1-11-207 provides that the officer in charge of the jury "shall not communicate to any person the state of their deliberations." When the jurors revealed their vote to the bailiffs, the bailiffs should have kept that information to themselves. Some courts have held that it is improper for the judge to ask the jury how it had voted. *See, e.g.*, *United States v. Sae-Chua*, 725 F.2d 530, 531-32 (9th Cir. 1984). In this case, however, the district court did not ask. The jurors volunteered that information to the bailiffs, and the bailiffs mistakenly passed it on to the judge. It is not necessarily trial error when the judge learns of the jury's numerical division through spontaneous disclosure by the jury. *See Hooks v. Workman*, 606 F.3d 715, 747 (10th Cir. 2010). In any event, Mr. Carter does not assert that the district court's knowledge of the jurors' votes was, by itself, reversible error. Rather, he claims that the district court's knowledge rendered the supplemental instruction unduly coercive.

[¶18] Mr. Carter's argument refers to two facts that are not supported by the record. First, although the record indicates that the district court knew the jurors' numerical votes, it did not know if the votes favored conviction or acquittal. The district court and the parties seemed to assume that there were eleven votes to convict and one to acquit. That assumption may be reasonable, but there are no facts in the record to prove it correct. Second, the record does not support the claim that the jurors knew that the

district court knew how they had voted. The jurors told the bailiffs their vote, but there is no indication that the jurors were aware that the bailiffs relayed those details to the judge.

[¶19] Neither of these assumed facts is critical to our decision. What is critical is that Mr. Carter's argument focuses on a single statement from the supplemental instruction – "a juror should not hesitate to reexamine his or her own views" – as unduly coercive when directed at the lone holdout juror. However, we must consider the instruction "as a whole and not according to isolated phrases and paragraphs." *Hoskins*, 552 P.2d at 348. The district court in this case also instructed the jury they had "a duty to consult with one another and to deliberate with a view to reaching an agreement *if it can be done without violence to your individual judgments*." (Emphasis added.) It added: "However, *no juror should surrender his or her honest conviction as to the weight or effect of the evidence* solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict." (Emphasis added.) The instruction, as a whole, emphasized the importance of individual judgment at least as much as the importance of reexamining individual views.

[¶20] As we observed earlier: "Communications from a judge to a jury are coercive when they possess the substantial propensity for prying minority jurors loose from beliefs they honestly have, constitute an undue intrusion into the jury's province and dilute the requirement of unanimity." *Hoskins*, 552 P.2d at 347-48. On balance, the instruction given in Mr. Carter's case cannot be viewed as an attempt to pry any juror from his or her honest beliefs. It did not intrude on the jury's province. It explicitly reinforced the requirement of reaching a unanimous verdict. We conclude, as we did in *Hoskins* and *Seeley*, that this instruction was not unduly coercive, and that it was proper for the district court to give the instruction to the jury. There was no violation of a clear and unequivocal rule of law, and Mr. Carter has failed to establish plain error.

[¶21] Mr. Carter also contends that he was denied his right to effective assistance of counsel because his defense attorney did not object to the supplemental instruction. Claims of ineffective assistance of counsel involve mixed questions of law and fact and are reviewed *de novo*. *Osborne v. State*, 2012 WY 123, ¶ 17, 285 P.3d 248, 252 (Wyo. 2102). "To prevail on a claim of ineffective assistance of counsel, a defendant must first establish that trial counsel's performance was deficient." *Id.*, ¶ 19, 285 P.3d at 252. We have determined that the instruction was properly given in this case. Defense counsel's failure to object to a proper jury instruction cannot be characterized as deficient performance.

[¶22] Affirmed.

**DAVIS, Justice**, specially concurring.

[¶23] I am in complete agreement with the majority's opinion in this case, but write separately to point out means by which two potential problems can be avoided. There is no good reason for anyone to know how a jury stands numerically before it returns its verdict, and a number of good reasons why its standing during deliberations should not be disclosed to anyone.

[¶24] It would be a simple matter to instruct and/or admonish the jury that it is never to communicate how it stands to anyone during deliberations, including the court. For some reason, Wyoming's civil and criminal pattern jury instructions do not contain this admonition.[4] The federal pattern instructions contain language that would do nicely in both civil and criminal cases with a little adaptation:

> Bear in mind also that you are never to reveal to any person—
> not even to the Court—how the jury stands, numerically or
> otherwise, on the question of whether or not the government
> has sustained its burden of proof until after you have reached
> a unanimous verdict.

1A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, *Federal Jury Practice & Instructions, Crim.* § 20:01 (6th ed., database updated Aug. 2015). *See also* 3 O'Malley et. al., *supra, Civ.* § 106.08 (civil instruction).

[¶25] In addition, the record reflects that the court learned that the jury was deadlocked after the jury invited the bailiffs into the jury room and conveyed information concerning the state of its deliberations to them. This information was then relayed to the court, and from there to the attorneys in the case. I mean no disrespect or negative comment on the integrity of the bailiffs or anyone else, but this is a poor practice, and would be even if the bailiffs had not further communicated the state of the jury's deliberations. The jury deliberation stage of a jury trial is perhaps its most fragile, because by design there is no record of what transpires. The jury has more off-the-record contact with the bailiffs than anyone else in a case. Jurors become somewhat dependent on and familiar with the bailiffs in a forbidding environment.

[¶26] Allowing jurors to communicate with the court about the case orally through the bailiffs creates a risk that the bailiffs may not properly convey their concerns to the court,

---

[4] There are some general references to communications during deliberations in the patterns, but they do not specifically address the points raised in this concurrence. *See* 2015 Wyo. Civil Pattern Jury Instruction 1.02 and 2014 Wyo. Criminal Pattern Jury Instructions 1.09A and 1.14.

and more importantly, that they might inadvertently influence jurors by verbal communications or body language. For that reason, the jury should be admonished and/or instructed to communicate with the court about the case only in writing, as should the bailiffs. The federal pattern instructions once again provide appropriate language:

> If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the bailiff. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

1A O'Malley et. al*., supra*, § 20:01 (criminal); *see also* 3 O'Malley et al., *supra*, §106.08 (civil).

[¶27] The notes a jury sends should obviously be made a part of the record. This process is not perfect, but it is likely to produce a better record than a chain of oral communications.