**John W. MAUPIN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 84–54.

Supreme Court of Wyoming.

Jan. 30, 1985.

Leonard D. Munker, State Public Defender, Sylvia Lee Hackl, Appellate Counsel, and Martin J. McClain (argued), Asst. Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Patrick J. Crank (argued), Legal Intern, for appellee.

Before THOMAS,* C.J., and ROSE, ROONEY,** BROWN and CARDINE, JJ.

CARDINE, Justice.

Appellant is appealing from his conviction of aggravated assault and battery. We reverse and remand for further proceedings.

The issues we must determine on this appeal are these:

1.  Did appellant voluntarily absent himself from his trial?

2.  If such absence was not voluntary, was it prejudicial to continue the trial in appellant's absence?

The relationship between appellant and his brothers and sister has been strained since the death of their father in November of 1978. In the summer of 1983, appellant suffered a heart attack and received medical care first locally and later in the state of Arizona. He returned to Wyoming August 8, 1983. On August 9, 1983, appellant drove his pickup truck to his brother James' house. James walked over to the truck, there was an argument, and appellant reached for a .22 caliber pistol laying in an open briefcase. James grabbed appellant's arm. There was a struggle, and the gun dropped to the floor of the pickup. James backed away, appellant got out of the truck, and an argument ensued. The gun remained on the floor of the pickup where it had fallen. Appellant returned to the pickup and drove away. James contacted the sheriff and, as a result, appellant was charged with aggravated assault and battery pursuant to § 6–2–502(a)(iii), W.S.1977.[1]

At the conclusion of the defendant's case, before closing arguments, appellant complained of chest pains and was hospitalized. The trial was adjourned for the balance of the day. The next morning appellant's counsel presented a doctor's written statement advising that appellant would require hospitalization and at least 24 hours of testing and treatment. Appellant's counsel moved for a continuance. This motion was denied. Appellant moved for a mistrial which was also denied. The attorneys then, without appellant being present, proceeded with the trial and presented closing arguments. The jury retired and, during deliberations, asked the court the following question:

"If we feel the defendant drew the gun in self-defense knowing he did have the gun in his hand, threatening his brother with it, must we find him guilty of aggravated assault and battery?"

The court's response was:

"§ 6–2–502 of the Wyoming Statutes provides in part that a person is guilty of aggravated assault and battery if he

* * * * * *

"(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another * * *."

---

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

1. Section 6–2–502(a)(iii), W.S.1977, provides:
   "(a) A person is guilty of aggravated assault and battery if he:

threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person."

The jury, after approximately eight hours of deliberation, returned a guilty verdict.

■■■ The Sixth Amendment to the Constitution of the United States is held to guarantee an accused the right to be present during every stage of his trial. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Article 1, § 10 of the Constitution of the State of Wyoming is even more explicit in its guarantee to an accused of the right of presence at trial in providing that,

> "In all criminal prosecutions *the accused shall have the right to defend in person* and by counsel, * * * to be confronted with the witnesses against him, * * * and to [have] a speedy trial by an impartial jury * * *." (Emphasis added.)

This right is incorporated into Rule 42, W.R.Cr.P., which provides:

> "The defendant shall be present at the arraignment, at every stage of the trial, including the impaneling of the jury, and the return of the verdict and at the imposition of sentence except as otherwise provided by these rules. In prosecution for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict."

The voluntary absence of defendant may properly be construed as an effective waiver of his constitutional right to be present. *Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). When the defendant voluntarily absents himself, the trial may be continued in his absence. The waiver of the right to be present, however, must be knowingly and voluntarily made. *Capwell v. State*, Wyo., 686 P.2d 1148 (1984); *Weddle v. State*, Wyo., 621 P.2d 231 (1980).

■■■ A defendant must have a compelling reason to stay away from the trial. If his absence is deliberate without a sound reason, the trial may start in his absence. *United States v. Tortora*, 464 F.2d 1202 (2nd Cir.1972). Where defendant's failure to appear on the date set for his trial occurred voluntarily, knowingly, and without justification, his conviction in absentia was affirmed. *United States v. Reed*, 639 F.2d 896, 64 A.L.R.Fed. 276 (2nd Cir.1981). And where the trial has begun and the defendant fails to appear for the second day of the proceedings, *United States v. Martinez*, 604 F.2d 361 (5th Cir.1979), or upon the date the trial was to resume, *United States v. Powell*, 611 F.2d 41 (4th Cir.1979), the trial may proceed because the defendant's absence was held voluntary or the result of his deliberate act. *United States v. Lochan*, 674 F.2d 960 (1st Cir. 1982).

The State, relying upon *United States v. Pastor*, 557 F.2d 930 (2nd Cir.1977), contends that appellant voluntarily absented himself from this trial and, therefore, knowingly waived his right to be present. The defendant in *United States v. Pastor* suffered a heart attack in 1966 and was hospitalized in subsequent years. His trial was set for May of 1976 after several adjournments. Trial time was limited to four hours a day because of the defendant's heart condition. The defendant complained of chest pains on the second day of trial and did not appear. There was no effort to call his doctor for two hours, and defendant failed to produce any medical evidence or justification or other reason for his failure to appear. Defendant reappeared at trial the next day and continued to be present throughout the balance of the trial. Defendant's absence was held voluntary and, therefore, a waiver of his right to be present at that portion of the trial. *United States v. Pastor*, supra, does not support the State in its contention for, unlike the instant case, defendant in *United States v. Pastor* presented no evidence, medical or otherwise, explaining or justifying his failure to appear.

The record here shows that appellant became ill at the close of his case. His attorney informed the court that appellant had been experiencing pains, was feeling ill, and that

"[h]e was on oxygen for a period of time after the defense closed its case, becoming further ill, and was transported to the hospital for examination by Dr. Harner.

"It's my understanding that at this time an EKG has been run by Dr. Harner revealing that he's had a mild coronary and that he has been admitted to the Crook County Memorial Hospital."

At this time, upon request of the defense, court was adjourned until the next morning, the court stating:

"If he's not available tomorrow then we would be faced with the problem [of] what should be done at that time.

"It would be my opinion that probably a mistrial would have to be declared, but that it wouldn't be double jeopardy under those circumstances because it isn't the fault of the State."

■ The next morning appellant's counsel presented a report from appellant's doctor which stated that at least 24 hours hospitalization for testing would be required. Counsel then moved for a continuance. The State resisted the motion claiming that defendant's absence was voluntary since he had refused a medical examination before trial and his brother and sister testified that they did not believe appellant had ever had a heart attack. There is no evidence nor does the State contend that a medical examination before trial would have or could have prevented the heart attack that occurred. It is immaterial that appellant's brother and sister did not believe that appellant ever had a heart attack. The court, nevertheless, denied the motion for continuance and the trial continued.

■ The record discloses that appellant had suffered a heart attack during trial and that because of his persistent chest pain, there was a risk of a major heart attack or cardiac complications occurring in the future. Upon these undisputed facts, the reason and justification for appellant's absence was sufficiently established and cannot be held voluntary.

■ The State next contends that should we conclude that appellant's absence was not voluntary, the conviction should nevertheless be affirmed because prejudice did not result from continuing the trial in his absence. Before a constitutional error can be considered harmless, the court must be able to declare that it was harmless beyond a reasonable doubt. *Krucheck v. State*, Wyo., 671 P.2d 1222 (1983); *Ortega v. State*, Wyo., 669 P.2d 935 (1983). We are unable to say in this case that the error was harmless beyond a reasonable doubt. Appellant was not present to assist and consult with his attorney when instructions on the law were submitted and during closing arguments. During deliberations, the jury inquired of the court concerning the applicability of self-defense. Appellant was not able to consult or advise with his attorney concerning the appropriate means for responding to the jury's inquiry. He was deprived of his right to be present at the trial and to be involved in the decisions being made.

"The right to be present at trial stems in part from the fact that by his physical presence the defendant can hear and see the proceedings, can be seen by the jury, and can participate in the presentation of his rights. * * * The defendant's right to be present at all proceedings of the tribunal which may take his life or liberty is designed to safeguard the public's interest in a fair and orderly judicial system. The presence of counsel alone at trial can never be harmless per se." *Bustamante v. Eyman*, 456 F.2d 269, 274–275 (9th Cir.1972).

When the jury assembled to hear argument, appellant's chair at counsel table was vacant. The court informed the jury that appellant was hospitalized and would require twenty-four hours of treatment and observation, and that his absence should have no bearing on their deliberations.

We do not know the effect of appellant's absence or the court's comments upon the jury. We do know that this was a close case. The jury deliberated approximately eight hours, returning once to inquire con-

cerning the law of self-defense. Did appellant benefit from the natural sympathy for one who is ill or did the jury conclude that appellant was feigning illness or that he did not care?

■ Here, the apparent difficulty encountered in arriving at a verdict supports the notion that appellant's presence during the latter crucial parts of the trial may have been critical. For the reason stated, we reverse the judgment of conviction and remand this case for further proceedings consistent with this opinion.

THOMAS, Chief Justice, specially concurring.

The constitutional provisions cited in the majority opinion and Rule 42, W.R.Cr.P., set forth a strong policy in favor of the right of an accused to be present at all stages of the trial. Concededly, that right may be waived by the voluntary absence of the accused. Here, even though one could argue that the appellant was voluntarily absent from his trial, the district court did not make any finding to that effect. Consequently, while I have some subjective feeling with respect to the impact of that absence upon the trial which is similar to that of the dissenting justice, I cannot identify any objective factors which would justify a conclusion of voluntary absence. I am satisfied that harmless error in a case such as this is foreclosed by the strong policy in favor of the right of the accused to be present.

I do offer a defense for proceeding as the trial court did in the face of the appellant's absence. Indeed this was a close case, and if the jury had acquitted the appellant then I am sure there would have been no complaint about his absence. I believe that the district judge proceeded with that possibility in mind, and of course the case would have been over if an acquittal had resulted. When that prospect did not materialize, however, I am satisfied that the trial judge then should have recognized the error in proceeding in the absence of the appellant, and should have directed a new trial.

The case as presented to us then must result in a reversal and remand.

ROONEY, Justice, dissenting.

I dissent. As noted in the majority opinion, this is a close case. The majority opinion properly sets forth the law applicable to it. Two questions are presented: One, was appellant's absence due to a bona fide health problem or was he using a contrived health complaint to manipulate the court thus voluntarily absenting himself? Two, if the absence was due to a bona fide health problem, was appellant prejudiced?

I believe the first issue is one of fact to be decided by the court in its discretion. Perhaps another judge would have continued the case for another day or two and would have secured additional medical opinions before making the decision, but the question here is not whether additional or different methods could have been used to fortify the decision, but whether or not the decision itself was accurate. In other words, the question is: Did the court abuse its discretion in deciding that appellant's absence was contrived and thus not voluntary?

Rule 42, W.R.Cr.P., provides in part: " * * * In prosecution for offenses not punishable by death, the defendant's voluntary absence after the trial has commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. * * * "

"The decision as to whether the defendant's voluntary absence from the trial amounts to a waiver is thus vested in the sound discretion of the trial judge, who is usually in a superior position to evaluate the evidence, including witnesses' credibility, because of familiarity with the background and circumstances. * * * " *United States v. Pastor*, 557 F.2d 930, 934 (2nd Cir.1977).

We defined "abuse of discretion" in *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980):

"A court does not abuse its discretion unless it acts in a manner which exceeds

the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. *Eager v. Derowitsch*, 68 Wyo. 251, 232 P.2d 713 (1951); *Anderson v. Englehart*, 18 Wyo. 409, 108 P. 977 (1910); *DiPalma v. Wiesen*, 163 Conn. 293, 303 A.2d 709 (1972); *In re Estate of Horman*, 265 Cal.App.2d 796, 71 Cal.Rptr. 780 (1968). * * *"

In this case, appellant was present at all stages of the trial until after the evidence was closed and the jury instructions prepared. The trial judge observed him during this period. Appellant's counsel had contacted the judge before the trial concerning appellant's condition to stand trial. They agreed to have appellant examined by a local physician, but appellant refused to have the examination. Appellant's brother and sister testified that they did not believe appellant had ever had a heart attack. The court continued the matter until the next day, but refused an additional continuance when the physician said another twenty-four hours *would be needed for testing.* The presentence report contained a letter from Dr. Dale A. Hogan which stated in part:

> "Throughout May during the period of this patient's hospitalization it was felt that he did use symptoms of chest pain in a manipulative manner. During this time he had at least two court appearances scheduled for hearings on various matters and these were cancelled or postponed due to his physical complaints. The timing of his complaints seemed to be coincident with the scheduling of these hearings.
>
> \*     \*     \*     \*     \*     \*
>
> "It is my belief that this patient uses his physical problems, which are indeed very real, to manipulate those people around him and that he will use his physical complaints to manipulate legal and social difficulties in which he may be involved."

The record does not reflect that Dr. Hogan's medical opinion was known to the court at the time the motion for continuance was denied, but, as noted supra, the question here is whether the judge's decision was accurate.

I would hold that the decision of the trial court did not exceed the bounds of reason under the circumstances. The court could reasonably conclude that the appellant contrived the absence and thus waived his right to be present. In other words the court did not commit an error of law under the circumstances. It did not abuse its discretion.

I would affirm this case on that basis, but I also do not believe that appellant was prejudiced even if the absence was due to a bona fide health problem. The instructions were "ready to go" before appellant left. As a practical matter, lawyers do not customarily consult with their clients while making a closing argument. The court's answer to the jury questions was a simple reference to the statute. Judges do not customarily accept advice from the parties themselves in formulating answers to jury questions. I cannot see a single place at which appellant's presence would have been of any moment in the result of this case.

The majority opinion inquires as to the effect of his absence on the jury. The court explained the reason for his absence to the jury. The most probable effect, if any, on the jury would be to evoke sympathy. The result would be favorable to appellant. It would explain the fact that the jury deliberated for a long period. I see no prejudice.

I would affirm.